HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

METROPCS GEORGIA, LLC,

    Plaintiff,

v.

METRO DEALER INC.; JAD DEA; and MOBILE USA, INC.,

    Defendants.

Case No. C18-1476-RAJ

ORDER

This matter comes before the Court on Plaintiff MetroPCS Georgia, LLC's ("MetroPCS") Motion for Preliminary Injunction. Dkt. # 9. No Defendant has filed any opposition or otherwise responded to MetroPCS' Motion. For the reasons that follow, the Court **GRANTS** MetroPCS' Motion for Preliminary Injunction.

## I. BACKGROUND

MetroPCS is a wireless telephone carrier with a national network and brand, which sells wireless personal communications services to its customers, including voice communications, wireless internet services, ringtones, SMS texting, instant messaging, and other wireless phone and data services. Dkt. # 11, ¶ 2. MetroPCS focuses on offering "unlimited" pay-in-advance, prepaid plans. *Id*. It relies on its dealers and subdealers to market and sell MetroPCS-packaged mobile wireless telephones, data

ORDER – 1

modems, and accessories to users of MetroPCS's service, and to provide customer service. *Id.* at ¶¶ 2, 6.

Until July 2018, Defendant Metro Dealer Inc. ("Metro Dealer") was a MetroPCS subdealer, operating through MetroPCS' Master Dealer, DMW GA, Inc. ("DMW"). Dkt. # 7 at ¶ 1; Dkt. # 10, Ex. A. In October 2017, Metro Dealer and DMW entered into an Exclusive Subdealer's Agreement to Comply With Dealer Agreement ("Subdealer Agreement"), with an effective date of October 12, 2017. Dkt. # 10, Exs. A, B. The Subdealer Agreement required Metro Dealer (along with "Affiliated Persons" and "Affiliated Entities") to comply with DMW's Exclusive Indirect Dealer Agreement with MetroPCS effective as of September 18, 2017 ("Dealer Agreement"), which Metro Dealer acknowledged having received, read, and understood. Dkt. # 10, Ex. A at ¶¶ 1, 8. Defendant Jad Dea signed this Subdealer Agreement for Metro Dealer. *Id.*

The Subdealer Agreement specifically provided that Metro Dealer "shall comply with all terms and conditions of the Dealer Agreement, including but not limited to . . . the covenant not to compete (Section 16.7)." Dkt. # 10, Ex. A at ¶ 1. Paragraph 16.7 of the Dealer Agreement, in turn, provided that the dealer would not sell wireless services in competition with MetroPCS or solicit, divert, or attempt to divert MetroPCS's customers for a period of six months following termination of its agreement, within two miles of any of the storefronts in which it had operated as a MetroPCS dealer. Dkt. # 10, Ex. B at ¶ 16.7. Specifically, Paragraph 16.7 provided:

> Dealer covenants and agrees that during the Term of this Agreement and for a period of at least six (6) months following any termination or expiration of this Agreement, Dealers shall not, and will cause its Affiliated Persons and Affiliated Entities, not to directly or indirectly (including by licensing) engage or participate in, or acquire, manage, operate, control or participate in the management, operation or control of, either alone or jointly, any entity that engages in the sale, resale or distribution of any wireless telephone or wireless internet data service including, without limitation, any other wireless phone, or wireless internet service, or service plan that offers unlimited local and/or long

ORDER – 2

distance calls and/or unlimited wireless internet service for a flat price, within
a two (2) mile radius of Dealer's MetroPCS Storefront Locations.

*Id.* Paragraph 16.7 also provided that if the dealer "breaches this warranty and covenant, then, in addition to any other legal or equitable remedy that MetroPCS may have, the post-termination of this warranty covenant will be extended for one (1) day for each day during which the Dealer's breach was ongoing." *Id.*

Paragraph 2.4 of the Dealer Agreement also contained a six-month non-solicitation provision:

> All customers are owned by MetroPCS and not by Dealer. During the term of this Agreement and for a period of six (6) months after termination of this Agreement (whether voluntary or involuntary, with or without cause), Dealer, its principals, owners, partners, members, shareholders, officers, directors, employees, agents ("Affiliated Persons") and any entity in which an Affiliated Person owns an interest and/or any successor entity to Dealer ("Affiliated Entity") shall not at any time (i) request any MetroPCS customer to curtail or cancel its business with MetroPCS, or (ii) otherwise solicit, divert or attempt to divert any such MetroPCS customer from patronizing MetroPCS.

Dkt. # 10, Ex. B at ¶ 2.4.

The Subdealer Agreement further provided that MetroPCS was "a third-party beneficiary" of the Subdealer Agreement, and that it "may take any equitable or legal action required to enforce its provisions and the terms and conditions of the Dealer Agreement." Dkt. # 10, Ex. A at ¶ 5.

MetroPCS alleges that on or before July 2018, Metro Dealer breached the Subdealer Agreement, prompting DMW and MetroPCS to jointly provide a Notice of Termination of the Subdealer Agreement for cause by letter dated July 13, 2018, effective August 15, 2018. Dkt. # 7 at ¶ 15; Dkt. # 11 at ¶ 8. Soon after termination, MetroPCS became aware that Defendants were selling wireless services from the former MetroPCS store for Tracfone Wireless, a competitor of MetroPCS. *Id.* at ¶ 9. After serving discovery on Tracfone, MetroPCS discovered that on September 7, 2018, Defendant Jad

ORDER – 3

Dea, Aaron Dea, and Richard Dea incorporated a new company – "Mobile USA Inc." – with its principal place of business at the same address of the former MetroPCS store. *Id*. at ¶ 6, Ex. E. Defendant Mobile USA then applied to TracFone to operate as a dealer from this location, and was approved. *Id*. at Ex. G. This record also lists the principal e-mail address of Mobile Inc. as shelley@metrodealerinc.com. *Id*.

On September 21, 2018, Richard Dea incorporated another entity, Mobile USA Dealer Inc., that allegedly entered a "confidential subdealer license agreement" with Mobile USA to operate the store. Dkt. # 10, ¶ 17; Exs. D, F. When MetroPCS questioned "Mobile USA Dealer, Inc." in November 2018, the representative, Shelly Lawrence, claimed that the store was being operated by "MobileUSA Dealer, Inc." and that this entity had "no affiliation" with Metro Dealer. Dkt. # 10, Exs. C, D.

MetroPCS filed this action for injunctive relief on October 9, 2018 (Dkt. # 1), and filed an amended complaint on January 14, 2019. Dkt. # 7. MetroPCS then filed this Motion on February 6, 2019. Dkt. # 9. MetroPCS served both its complaint and this motion on all Defendant via U.S. Mail and process service. Dkt. # 7 at 10; Dkt. # 9 at 17.

## II. DISCUSSION

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, MetroPCS must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "A preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). This is only appropriate as long as the plaintiff also shows there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.*

ORDER – 4

MetroPCS' Motion asks the Court to preliminarily enjoin Defendants from violating the terms of the non-compete and non-solicitation provisions of the Subdealer and Dealer Agreements. Dkt. # 9. Although Defendants have seemingly been served, no Defendant has responded to MetroPCS' Motion or entered an appearance in this matter. Defendant Jad Dea, acting *pro se*, filed a Motion to Dismiss on February 14, 2019, but did not respond to or oppose this Motion. Dkt. # 12. Although Local Rule LCR 7(b)(2) provides that failure to file papers in opposition to a motion "may be considered by the court as an admission that the motion has merit," Local Rules W.D. Wash. LCR 7(b)(2), the Court nevertheless proceeds to the merits of the Motion.

First, MetroPCS argues that it is likely to succeed on the merits because each of the Defendants are in violation of the Dealer and Subdealer Agreements, including the non-competition and non-solicitation provisions, by selling competing wireless services from the same location used to sell MetroPCS services. Dkt. # 9 at 9. The Court agrees. Washington courts generally enforce non-competition and non-solicitation provisions so long as they are reasonably necessary to protect the business or good will of the franchisor, "giving special consideration to time and area restrictions." *Armstrong v. Taco Time Int'l, Inc.*, 30 Wash. App. 538, 543, 635 P.2d 1114, 1117-18 (Wash. Ct. App. 1981); *see also HomeTask Handyman Servs., Inc. v. Cooper*, No. C07-1282-RSL, 2007 WL 3228459, at *3 (W.D. Wash. Oct. 30, 2007). The Court finds that MetroPCS has provided sufficient evidence to show that the Dealer Agreement's non-compete and non-solicitation provisions are likely enforceable against Defendants. In fact, the provisions at issue here are identical to those that served as a basis for Judge Robart's Preliminary Injunction Order in *MetroPCS Pennsylvania, LLC v. Arrak*, C15-0769-JLR, 2015 WL 3893155 (W.D. Wash. June 24, 2015). In *Arrak*, Judge Robart found at the preliminary injunction stage that these provisions were "reasonably necessary to protect [MetroPCS'] business, particularly in terms of maintaining its customer base and preventing appropriation of and damage to its goodwill." *Arrak*, 2015 WL 3893155 at *3. Judge

ORDER – 5

Martinez also considered these provisions and arrived at the same result in *MetroPCS New York, LLC v. 35-46 Broadway, Inc.*, C17-1554-RSM, 2018 WL 3455500 (W.D. Wash. July 18, 2018). This Court agrees with Judge Robart and Judge Martinez that these provisions are reasonable in time and geographic scope. This Court also similarly finds that the Agreements are valid, enforceable against Defendants, and that Defendants are likely in violation of the Agreements' non-competition and non-solicitation provisions. MetroPCS succeeds on this prong.

Second, the Court finds that MetroPCS has adequately demonstrated that it will suffer irreparable harm absent an injunction. *Alliance for the Wild* Rockies, 632 F.3d at 1134–35. MetroPCS has provided evidence that Defendants continue to use the former MetroPCS storefront to sell products and services of a competitor, and is soliciting customers in this capacity, in violation of the Agreements. As Judge Robart ruled in *Arrak*, the nature of MetroPCS' business "makes it vulnerable to losing customers after its relationship with a dealer ends." *Arrak*, 2015 WL 3893155 at \*3; *see also 35-46 Broadway*, 2018 WL 3455500, at \*3. Even though MetroPCS filed this Motion several months after termination of the Agreements, allowing continued violations by Defendants of these Agreements' provisions would still risk placing MetroPCS at a "distinct disadvantage in attempting to re-franchise the area or otherwise recapture the market." *HomeTask,* 2007 WL 3228459, at \*4. Accordingly, just as Judge Robart and Judge Martinez found in their respective MetroPCS cases, this Court also finds that MetroPCS has demonstrated the possibility of irreparable harm if an injunction does not issue.

Third, the Court concludes that MetroPCS has shown both that the balance of equities tips in its favor and that an injunction is in the public interest. *See Alliance for the Wild Rockies*, 632 F.3d at 1134–35. In examining the balance of the equities, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. MetroPCS has demonstrated that is at risk of losing even more customers and sustaining

ORDER – 6

damage to its goodwill absent an injunction, whereas an injunction threatens Defendants only with the inability to compete with MetroPCS within a two-mile radius for six months.  The Court also agrees with MetroPCS that there is little likelihood of substantial harm to Defendants if the preliminary injunction requested here is issued; it will simply compel Defendants to comply with the terms of their Agreements for the relatively short duration of six months.  Just as these prongs favored MetroPCS in *Arrak* and *35-46 Broadway*, they also favor MetroPCS here in a nearly identical factual scenario.

Fourth, the Court agrees with MetroPCS that a bond under Federal Rule of Civil Procedure 65(c) is not necessary in this case.  Despite Rule 65(c)'s seemingly mandatory language regarding injunction bonds, the Ninth Circuit has held that district courts have "discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  In particular, a district court "may dispense with the filing of a bond when it concludes that there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*.  The Court agrees with MetroPCS that because it has demonstrated a strong probability of success on the merits, and seeks only to enjoin Defendants from doing what they have no right to do under their Agreements with MetroPCS, there is no realistic likelihood of harm that they will be "wrongfully enjoined." *Id.*  Accordingly, under these circumstances, no security is necessary.

Finally, MetroPCS has submitted a Proposed Order including an award of attorney's fees pursuant to the terms of the Dealer Agreement between the parties.  Dkt. # 9-1 at p. 2, ¶ 8.  Aside from a single mention on the last page, MetroPCS did not raise this issue in its Motion, and did not provide any legal authority or analysis to grant this request. Dkt. # 9 at 16.  The Court will thus decline to rule on this request at this time.  Should MetroPCS seek an award of its reasonable attorney fees and costs incurred in connection with this motion, MetroPCS must make such a request by filing the appropriate motion before this Court, setting forth the applicable legal standards, and providing the appropriate evidence supporting the fee request.

ORDER – 7

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** MetroPCS' Motion for Preliminary Injunction. Dkt. # 9. Defendants Metro Dealer, Jad Dea, and Mobile USA; Metro Dealer's Affiliated Persons and Affiliated Entities; Metro Dealer's principals, officers, directors, employees, agents, successor entities; and all persons acting in concert or in active participation with them are hereby **ENJOINED**, directly or indirectly, from:

    a. Engaging or participating in, or acquiring, managing, operating, controlling or participating in the management, operation or control of any entity that engages in the business of the sale, resale, or distribution of any wireless telephone or wireless internet data service within a two mile radius of Metro Dealer's former MetroPCS store location;

    b. Selling, reselling or distributing any wireless telephone or wireless internet data service, within a two mile radius of Metro Dealer's former MetroPCS store location;

    c. Requesting any MetroPCS customer to curtail or cancel its business with MetroPCS; and

    d. Otherwise soliciting, diverting or attempting to divert any such MetroPCS customer from patronizing MetroPCS

    e. No bond or other security is required, pending further order of the Court.

This preliminary injunction is effective immediately and will remain in effect for six months, or until the trial on this matter, whichever comes first.

DATED this 15th day of April, 2019.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 8